*The probate of the paper propounded as the Will of* WILLIAM W. HARDER.

THE words "Will you witness my will?" or "I want you to witness my will," addressed by the decedent to, and heard by both subscribing witnesses, constitute a sufficient acknowledgment, declaration and rogation.

> FRANK REEDER, *for Proponent.*
> LOWREY & SOREN, *for Contestant.*

MARY H. WALLACE, general legatee under the instrument, propounded for probate the will of the decedent, who was her brother. The only next of kin to be cited was the father of the decedent and the proponent, George Harder, who contested the probate.

The only testimony taken was that of the two subscribing witnesses, under a commission issued to Jefferson, in the State of Ohio.

The witnesses testified as follows:

Nathan Parish, of Kingville, Ohio, testified: I was intimately acquainted with decedent for over twenty years. He was buried in Kingville, in September, 1868. I cannot say whether or not I was present at the time decedent signed his name to the instrument propounded. I do not recollect whether he signed it in my presence or not. Said decedent, just before I subscribed my name as a witness to said instrument, asked me, in these words: "Will you witness my will?" Thereupon I took said instrument, examined the signature of said decedent, and then subscribed my name. Said decedent simply asked me, "Will you witness my will?" The person whose name is signed, together with my own, as witness to said instrument, was in the room at the time of said subscription, or acknowledgment and declaration. I do not remember whether I saw him write his name or not. Said decedent and myself were in the room at the time

he so subscribed his name. Said decedent made the same request as I have before stated : " Will you witness my will ? " Said person's name is J. R. Brown. Said decedent was at the time rooming over my store ; and I considered him, at the time, of sound and disposing mind and memory, competent to devise real estate, and transact ordinary business of life. He did not seem to be under any restraint. I did not suppose, at the time, he intended the said will to amount to anything ; but he asked us to witness said will and we did so.

*Cross-examined :*

I do not remember whether I saw decedent write his name there or not; I do not positively testify that he signed it in my presence; he did not direct my attention in any particular manner to his signature ; he showed me the said instrument, calling attention particularly to his signature; I looked at his signature, and subscribed my name; I was acquainted with the handwriting of said decedent, and by that, with my own signature, and the general appearance of the instrument, I was able to identify it; the decedent simply said: " Will you witness my will ?" I testify from a recollection of the language ; he showed me said instrument; I identify it; I have no doubt this is the same instrument; I do not think he used the words " subscribing witnesses," but he did use the words " Will you witness my will ?"

Q. Did the said decedent make the request to which you have testified when he subscribed his name, or was it after his name had been subscribed ? A. After his name was subscribed; the decedent was in the room when I subscribed my name, but I cannot say whether he saw me write my name or not; the other person, Brown, was in the room ; I do not know whether he saw me write my name or not; I saw the side of the sheet that lay up ; Mr. Brown, together with the decedent and myself, were in a room over my store when Brown signed his name to said instrument. The language of the dece-

dent "Will you witness my will?" was used referring to Mr. Brown and myself; we were together at the time; I heard said decedent say nothing further to him. They were both in the room when I signed my name.

John R. Brown, of Kingville, testified: I was acquainted with decedent about thirty years; I was not present when decedent signed this instrument, and I did not see him sign his name to the same; all the acknowledgment he expressed to me was, he requested Mr. Parish and myself to witness his will; Mr. Parish was present when he made the request to us to witness his will; said decedent was in the room when said witness Parish signed his name; said decedent made no direct declaration that said instrument was his last will and testament; I don't know but decedent was competent to transact business and devise real estate; and I do not know that he was under any restraint.

*Cross-examined.*

Decedent did not call my attention to his signature in any manner; he made no acknowledgment except the request to which I have heretofore referred; that Mr. Parish and myself should witness his will; I have no means of identifying the instrument except by my own signature; decedent asked Mr. Parish and myself to sign his will; I do remember the words used; he requested Mr. Parish and myself to witness his will, saying to Mr. Parish and myself: "I want you to witness my will." I do not think the words "subscribing witness," were used at all; I cannot say positively whether this request was made by decedent after his name had been subscribed to this instrument; the decedent was in the room when I signed my name, but I cannot say whether he saw me sign my name or not; the other person, Parish, was in the room, but I cannot say whether he saw me sign my name or not.

THE SURROGATE. Although this case has been so ably

and thoroughly reviewed and argued by the learned counsel retained in it, I cannot see any doubt in the testimony. The simple question is whether the words addressed by the decedent to and heard by both the subscribing witnesses, "Will you witness my will?" or "I want you to witness my will;" constitute a sufficient acknowledgment, declaration and rogation.

The rulings of our Courts on this question have been quite uniform, and very liberal. It has been held that "any communication of the idea that the instrument is his will, will meet the object of the statute." (*Seguine* v. *Seguine*, 2 *Barb. S. C.*, *p.* 385.) This knowledge of the nature of the transaction, "must be evinced with reasonable definiteness," by the party executing the will. (*Hunt* v. *Mootrie*, 3 *Brad. R.*, *p.* 322); "so that the testamentary character of the instrument is shown to have been communicated by the testator to the witness." (*Ex. parte, Beers*, 2 *Brad. R.*, *p.* 162.) "The law requires that the testator shall communicate to the witnesses that it is his will, and he desires them to attest it." (*Moore* v. *Moore*, 2 *Brad. R.*, *p.* 261.) And "unlimited latitude of expression may be used, if it convey the proper meaning." (*Ham* v. *Case*, *Redfield's Sur. R.*, *p.* 307; see also, *Tunison* v. *Tunison*, 4 *Brad. R.*, *p.* 138; *Vaughan* v. *Burford*, 3 *Brad. R.*, *p.* 78; *Van Hooser* v. *Van Hooser*, *Redfield's Sur. R.*, *p.* 365; *Whitbeck* v. *Patterson*, 10 *Barb. S. C. R.*, *p.* 610; *Torrey* v. *Bowen*, 15 *Barb. S. C. R.*, *p.* 304; *Nipper* v. *Groesbeck*, 22 *Barb. S. C. R.*, *p.* 670; *Coffin* v. *Coffin*, 23 *N. Y. R.*, *p.* 9; *Tarrent* v. *Ware*, 25 *N. Y. R.*, *p.* 422; *Peck* v. *Cary*, 27 *N. Y. R.*, *p.* 9; *Nelson* v. *McGiffert*, 3 *Barb. Ch. R.*, *p.* 158.)

In this case it does not affirmatively appear that each or either subscribing witness saw the decedent subscribe his name to the instrument propounded. One of them is not sure that he did; the other is sure that he did not. As a question of fact, I conclude that the decedent did not sign it in their presence.

It has been held, in many cases, in our Courts, and· appears to be settled law, that a separate acknowledgment of the signature of the testator is not necessary where the instrument is already signed by him when he acknowledges the instrument to be his will. The greater includes the less; and his acknowledgment that this instrument is his will is held to include and dispense with the acknowledgment that the signature appended to it is his signature.

Willard on Executors, section 102, says:

" The result of the cases seems to be that where the testator produces the will, with his signature visibly apparent on the face of it, to the witnesses, and requests them to subscribe it, there is a sufficient acknowledgment of his signature."

This has been held in the cases of *Jauncey* v. *Thorne*, 2 *Barb. Ch. R.*, *p.* 40·; *Robinson* v. *Smith*, 13 *Abbott's Pr. R.*, *p.* 359; *Baskin* v. *Baskin*, *N. Y. R.*, *p.* 416; *Willis* v. *Mott*, 36 *N. Y. R.*, *p.* 490; and in many cases in the English books, in construing a statute quite similar to ours.

Decree of probate.